May it please the Court, I'm Victor Haltom, counsel for Mr. Barajas. Mr. Barajas' conviction in the California trial court in this case was based in part on false evidence. The alleged victim in this case testified at the very beginning of the trial that she was a virgin. There was pretrial litigation concerning that, and the trial judge noted that that was a significant fact in the case, and ultimately it later became a very significant fact. Mr. Haltom, is there any evidence in the record to the effect that the prosecution knew or should have known that the victim's testimony that she'd been raped by her stepbrother at the time that he introduced this evidence? No, Your Honor, and I don't contend otherwise. And is there any Supreme Court ruling that indicates in this circumstance? I mean, clearly the Supreme Court has said you can't rely upon a prosecution that uses knowingly false testimony, okay? In this case, you're saying they didn't know about it. So what impact does that have? I mean, we're looking at some harmless error analysis. I assume the evidence about this young woman's prior sexual history was clearly before the jury. In many instances, it was just cross-examined. They just knew about all this. There was all kinds of evidence about it. So what difference does that make in this case? How does that help you? Well, I think you asked me a couple of questions. I did. I apologize for giving you too many here. Okay. With respect to the first question, you asked me what U.S. Supreme Court case. And bear with me here. I'm going to cite first to this Court's decision in Killian, which is cited in the briefs of both parties, which in turn relied on this Court's decision in United States v. Young, which relied on the U.S. Supreme Court case United States v. Bagley. Bagley is cited in my brief. It is cited in the district court's briefing, where the district court and I both state under Killian, Young, and Bagley that the Federal constitutional question does not hinge on whether there was awareness on the part of the prosecutor. I think it's excerpts of record page 19, where the district court stated that proposition and cited those three cases. Now, as to your second question, Your Honor, as I understand it, you're asking me, the jury heard evidence that she was a virgin. She wasn't a virgin. She clearly had had sexual experience, medical testimony. People had seen this young woman, examined her, cross-examination. The jury clearly knew all of this. So in what way was this a prejudice to your client? Okay. And the way it plays out, I think the facts show the prejudice. So if you'll bear with me, she is the initial or one of the initial witnesses and gets up and says, I'm a virgin. Then the whole trial goes forth, and then that evidence blows up on the prosecution when the doctor, who the prosecution concedes was authoritative, credible, and right, says, no, she wasn't. And so then they call her back, and she has to explain that, explain the original lie. And so how does she do that? Well, I was raped by my stepbrother, who was a Marine. We then develop evidence from talking to the stepbrother, which is in the record. No, I didn't. The jury never heard that. The jury only heard one side of the story here. They only heard her denial that she had been raped by her or, excuse me, her assertion that she had been raped by her stepbrother. So the jury didn't get to hear, and the judge expressly acknowledged that. And he said, hey, this was a late development in the trial. This happened in, I think, the prosecution's further rebuttal case. So the defense did not have the opportunity to investigate and present the evidence, which was later developed and which is contained in the excerpts of record now, that, hey, this was a lie, too. She lied to try to explain when she was caught in the earlier lie. And so I've, in my brief, Your Honor, set forth a series of cases which show the significance, the probative value of, in a sexual assault case, an alleged victim having made prior false accusations of sexual assault. And that's exactly what we have here. And this Court has previously recognized that that type of evidence is explosive, probative, and its exclusion, therefore, inherently prejudicial. So the – let's see. And I've cited the Killian case, which is the principal rule upon which I rely. In terms of that prejudice issue, I think that a very on-point case is the Redmond case decided by the Seventh Circuit and relying on U.S. Supreme Court authorities such as Van Arsdal, if I'm pronouncing that correctly, Olden and Davis v. Alaska, concerning the significance in terms of reliability and prejudice to the exclusion of a victim's prior false accusation of sexual assault. So I think the prejudice is clear. There's a clear constitutional rule. You know, I've read Killian. Tell me why Bagley clearly establishes the rule that perjured testimony presented without the knowledge or even the should have had knowledge of the prosecutor violates the Constitution. Okay. I have to say I'm a little skeptical of Killian. Okay. And I think that that's – Of course, I'm bound by Killian. I understand that. But I'd really be more comfortable if I understood why Bagley tells us that that's what the rule is.  And the – I think I'd start with the quote from Killian, which says, quote, a conviction based in part on false evidence, even false evidence presented in good faith, hardly comports with fundamental fairness. And then Killian, for that proposition, cites Young, which in turn cites Bagley. Now, Bagley was not just a straight false evidence or new evidence case. Bagley is a Brady nondisclosure. And the court there in Bagley was talking about the differing Brady obligations before a prosecutor based on a defense request or without a defense request. And the court simply observed in Bagley that when there is no showing that the prosecutor was aware or put on notice of the falsity of evidence or his possession of Brady evidence, that the fact that it was not disclosed to the defendant can still result in cognizable prejudice if it gives rise to a reasonable – or if the court has a basis. But Bagley is premised upon the prosecutor knowing about this or having some reason to know about this. I mean, the practical problem I have, which is not specific to your case – I'll come down to your case in a moment – is witnesses lie all the time. Not just irrelevant lies, but perjury. That is to say, lies relevant to the outcome of the case. And I think it happens more often in criminal cases than in civil cases. And if it's a ground for finding a constitutional violation that I have been convicted based upon lies by the witnesses, oh, my God. I understand perfectly, and the law is very clear, that the prosecutor is not allowed knowingly to put on perjury testimony. And it even goes beyond just knowingly. It's, you know, the prosecutor is on notice. But if the prosecutor isn't even on notice, that's a tough rule for me. And I'm not sure that's what Bagley says, and I'm a little reluctant to read Killian as saying that, even though that's what it seems to say. That is what it says. And then I think it's the – in that regard, Your Honor, and I think that you make a very fair point, because how can we just throw out any conviction based on false evidence? Because probably, I don't know, 50 percent of trials, there's somebody lying. Maybe 95 percent. But this case is a little different, so I don't think you have to go quite there, because even the trial court said, and this is at page 16 of my opening brief, and the trial court was troubled by the, you know, this development at the very end of the case and said, because of the lateness of this development and its significance, it may be that you would have, if there's, you develop newly discovered evidence in this area, if there is a conviction, you may have some argument for a new trial. And that's exactly what has happened here. We developed that newly – we developed that evidence that the jury in this case never heard. It's in the record, and there it is. So I think that that's a – it's not just a, hey, we've got some assertion or speculation that there was false evidence. We've got a Marine who's corroborated by other witnesses who I've attached investigative reports concerning saying that this was false. This accusation that she had been raped by her stepbrother is false, and the jury didn't hear it. So why isn't that a collateral matter, a collateral issue? Well, I mean, it is in a sense, but it directly impeaches her. I mean, she got up and said, he raped me. And he's – it was her – it was the prosecution trying to explain her earlier lie. I shouldn't say the prosecution. It was her trying to explain her earlier lie that she got caught in. And then how did she explain it? With another lie. So shouldn't the jury have the benefit of hearing both sides of that story? And they were denied that opportunity here because of the way this evidence was sprung right at the very end of the case. Okay. Let's hear from the State and then we'll give you a chance to respond. Thank you very much, Your Honor. Good morning. May it please the Court. Justin Riley on behalf of the Warden. I'll skip straight to Killian, hopefully to aid this Court in resolution. Killian, the perjury issue in Killian was not an AEDPA issue. The Court was reviewing the issue de novo because of a procedural glitch happening in that case. But nonetheless, the Court finds that there is a constitutional right to be free of a conviction based on perjury testimony in Killian. Based very loosely on a vague citation – the citation wasn't vague – but on a citation to a very vague principle in United States v. Bagley. And that principle in Bagley was just a very general, we want trials to run smoothly, we need to be – the outcome of a trial needs to be reliable. Since Killian v. Poole, this Court in Hawley v. Yarborough has made abundantly clear there's no clearly established right in due process to – I'm sorry. Let me start over. The admission of evidence does not violate due process. The admission of evidence does not violate due process. That is since Killian. Killian was not an AEDPA case. That's why this Court is not bound. Killian was relying on a very general principle. Also since Killian, Moses v. Payne has made very clear that AEDPA cases are not to be decided on very vague principles. Instead, clearly established means something very, very different than it did in 2002 when Killian was decided. As the Warden has stated in his brief, one of appellants' first steps to obtaining Federal habeas relief is to identify that clearly established Supreme Court precedent. And as we've shown in the briefing, the Supreme Court itself has stated that the admission of perjured testimony, not including knowledge by the prosecutor, is an open question whether or not that violates due process. Open question equals no clearly established Supreme Court precedent. The cases are clear on that. Not only has the Supreme Court recognized that this is an open question, there is both an inter-circuit and intra-circuit split on just what the standard is with regard to the admission of perjured testimony. So if you take all of those things, Killian not being an AEDPA case on the point, citing to a very vague principle of due process in the United States v. Bagley, then the subsequent cases, Moses v. Payne really locking down clearly established, Hawley v. Yarbrough saying there's no right, there's no due process right with regard to the admission of evidence. And then you also add to that the clearly established Supreme Court precedent is that the prosecutor has to knowingly present that evidence. And the prosecutor, I think there's no dispute that the prosecutor did what he was required to do under NAPA when she says, I mean, she's off the stand. She's done. Oh, absolutely. She says to him, you know, actually I have had sex before. I just didn't understand the definition of virgin. Absolutely. Yeah, right. But after she tells him this, he puts her back on the stand. I don't know what more the prosecutor could have done in this situation. Well, what he could have done, and I'm not sure I blame the prosecutor, but, you know, this is a lousy prosecution. I mean, the ordinary behavior of a rapist is not to call the girl a few days later and try to meet her. And I understand the jury heard that. I mean, the jury had all this in front of them. But this does not sound like a rape case to me. I'm glad I wasn't the jury in this situation. I'm glad you're not the defendant in this situation. I do know how the jury decided the case. And there is also a very developed harmless error analysis that the district court went through that is my position. This Court does not even need to address, but it's there for the Court. I think you have my position. If there are any other questions, I'd love to address them. Thank you. Would you like a minute? I read Killian last night, and unless I misread it, it was an AEDPA case. They cited 2254 and the other. Well, it wasn't, it wasn't. He says AEDPA doesn't apply because this couldn't have been presented to the State court. Okay. Very well. And then I think that counsel, saying Killian was post-2002, Killian is binding on this Court in terms of finding that constitutional rule and relying on U.S. Supreme Court for that purpose. I think that counsel was making a point that after Killian, Mousladen was, if I'm pronouncing that correctly, was decided by the U.S. Supreme Court, which said, you know, we really need a clearly established means pretty darn close. But then there's Panetti, which is cited in the government's, the AG's brief. And there's some significant quotes in Panetti, the upshot of which is AEDPA does not require courts to wait for an exactly factual, factually identical case to come along. There are general principles, such as due process, which can be applied, and obviously which are necessarily general. And that's what we have here. Okay. Thank you. Thank you. Nice arguments on both sides. Barras versus Knowles submitted for decision.
judges: Todd, Fletcher W. , Smith M.